**Application of Jean-Marie MASSOUBRE.**

**Patent Appeal No. 8293.**

United States Court of Customs
and Patent Appeals.

April 16, 1970.

---

Brumbaugh, Graves, Donohue & Raymond, New York City, attorneys of record, for appellant. Mark N. Donohue, Donald S. Dowden, New York City, of counsel.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. Jack E. Armore, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judges, and ROSENSTEIN, Judge, United States Customs Court, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals, ad-

hered to on reconsideration, affirming the examiner's rejection of claim 41 of appellant's application [1] as unpatentable under 35 U.S.C. § 103. Several claims have been allowed.

The invention relates to devulcanizing natural or synthetic vulcanized rubber to the regenerated rubber product. This is done by dividing the rubber into ground scrap, swelling the rubber with a compatible and relatively nonvolatile solvent such as a mineral, vegetable or animal oil, adding a devulcanizing agent and heating. The result is a liquid or semi-liquid regenerated rubber product alleged to be superior to the prior art solid reclaims. No damaging mechanical working is required to render the liquid or semi-liquid product plastic, and it readily combines uniformly to produce a homogenous mixture with fresh rubber.

The sole claim on appeal, claim 41, is directed to a product and reads:

> 41. An at-least-partially-liquid product comprising a devulcanized rubber and a solvent for said rubber, said solvent being compatible with said rubber and substantially nonvolatile at a temperature of 180°C to 230°C and atmospheric pressure and said rubber being of a type vulcanizable with sulfur.

The examiner's rejection under 35 U.S.C. § 103 was predicated on the following reference:

Great Britain 14,659 June 18, 1914

The British patent discloses a process for devulcanizing and reviving rubber in which powdered rubber, a desulphurizing agent and a rubber solvent "calculated to dissolve the entire mass" are heated together in a closed boiler system. The reference states:

> After having produced their respective effects in boiler $a$, the solvent and the desulphurizing agent pass, under the form of vapour, through tube $i$, into surface condenser $o$ and are recovered into tank $q$.

---

[1]. Serial No. 249,994 filed January 8, 1963, entitled "Method of Regenerating Vulcanized Rubber, Resulting Products, and Compositions Containing the Regenerated Products."

One end of the horizontal boiler has a cover to facilitate the removal of treated rubber, the removal being accomplished by axially displacing, piston-fashion, a disc mounted tightly inside the boiler.

It was the examiner's view that the claimed product differed from the solvent-swelled devulcanized rubber of the reference, while the system is still closed, only in the choice of solvent. The use of a nonvolatile solvent to dissolve the rubber was considered to be obvious especially since appellant's disclosed solvents are allegedly well-known solvents for rubber.

In affirming, the board stated:

We agree with the Examiner's holding to the effect that numerous solvents, both volatile and nonvolatile, are well known to dissolve rubber. Therefore, it is considered as obvious to use either type for this purpose depending on whether a solid or liquid product is desired. The temperature recited is essential only in regard to the ultimate use of the composition which is not included in this claim. In the absence of the use, the high temperature recited is therefore meaningless. Moreover, as the Examiner points out, since the reference does not specify the temperature at which the solvent is driven off, until it is volatilized the patent * * * is regarded as teaching a devulcanized rubber dissolved in a compatible solvent.

Appellant supports his contention that the board erred by relying on four specific recitations in the appealed claim. Primarily, it is argued that the British patent fails to disclose an *at-least-partially-liquid* reclaim inasmuch as the solvent there is eliminated from the reclaim and the final product is so solid that it must be removed by a forcing disc. The whole point of the reference, it is urged, is to teach the removal of the solvent. Moreover, appellant argues, it is questionable whether the rubber is ever dissolved during the process to form a liquid since rubber characteristically does not dissolve but only swells in the presence of an oil or ordinary solvent.

Additionally, appellant argues that the precise nature of the solvent is not disclosed, whereas the claim requires that the solvent be *compatible* with the rubber. Furthermore, appellant's solvent must be *nonvolatile* at a temperature of *180°C. to 230°C.* and this limitation is not suggested, it is contended, by the reference. The suggestion that such would be obvious if a liquid product is desired finds no basis in the art and is without reason, appellant argues.

Finally, appellant argues that there is no "accidental anticipation" in this case and adds that even if the reference did disclose, at some intermediate stage, a product falling within the claim language, no utility whatever therefor is disclosed. Such product, it is alleged, is inherently transitory and unstable due to the volatile solvent and is unsuitable for appellant's end uses; therefore, it fails to render obvious the claimed product. In conclusion, appellant points to his affidavit comparing the solid reclaim of the reference with that of his invention and allegedly showing the latter to be markedly superior.

The solicitor responds by agreeing with the board's comment with respect to the limitations "at-least-partially liquid" and "nonvolatile" and adding:

Manifestly, if the objective is a liquid product, a solvent which is non-volatile at the treatment temperatures would be employed. A liquid product would expectedly enhance solubility and the capacity to compound with fresh rubber.

As to the requirement that the solvent be compatible with rubber, the solicitor argues that inasmuch as the objective of the reference is to prepare a devulcanized rubber, it would be obvious to the art that the solvent should be compatible. Additionally, he notes that the examiner was not contradicted in his statement that appellant's solvents are well-known solvents for rubber. With regard to the claimed temperature ranges, the solicitor merely states that the particular degree

of solvent volatility as so expressed has not been shown or disclosed to have any critical significance.

It is the solicitor's view that the claimed product is disclosed in the British patent. The intermediate product is not "inherently transitory or unstable" merely because it contains a solvent which is volatile at a given temperature. Nor, it is also alleged, is there any evidence that this intermediate product is unsuitable for the same uses as appellant's reclaim. Moreover, the solicitor contends, the failure to disclose a use for this product is of no legal significance on the issue of obviousness and even an accidental disclosure, if it is a clear teaching to the art, is available as prior art. The appellant's reliance upon his affidavit is misplaced, it is argued, because the affidavit comparisons of a *solid* rubber reclaim with a *liquid* rubber reclaim are meaningless.

We fail to find the solicitor's arguments convincing on this record. There are similarities between appellant's invention and the reference disclosure to be sure; however, significant differences exist therebetween also.[2] The Patent Office's position regarding the use of a nonvolatile solvent and the obtention of a partially liquid product finds no basis in the factual evidence before us.

It is clear from a consideration of the British patent as a whole that the entire tenor of that reference is that the solvent is to be volatilized and recovered, leaving a solid product to be pushed out of the boiler. This is no suggestion of obviousness of the claimed product and, moreover, it appears to be a refutation of the unsupported allegation that those skilled in the art would use *either* a volatile or nonvolatile solvent. Nor do we find that the claimed product is inherently produced while carrying out the reference process and thus accidentally disclosed. Appellant's arguments concerning the intermediate product are persuasive, at least as to a conclusion that there is a lack of certainty as to whether such product is the same as that here claimed. Irrespective of that, however, the reference did not recognize the intermediate and is devoid of any teaching or suggestion that would render the claimed product obvious. We have carefully considered the solicitor's arguments and authorities cited in support thereof; however, we are unable to sustain the rejection on this record.

Accordingly, the decision of the board is reversed.

Reversed.

BALDWIN, J., dissents.

2. As an example of the distinctions, we note the board's language in reversing the examiner's rejection of a method claim:

" * * * the patent is silent relative to essential process features of the claim including the use of a nonvolatile solvent."